The fourth district appellate court of the state of Illinois has now convened. The Honorable James A. Connick presiding. This is the people of the state of Illinois versus Samuel Beard, case number 419-0037. Would the appellant state your name please? Good morning, Sarah Lucy for the defendant. Thank you, and the appellee? Linda McClain for the appellee. The appellant may proceed. Good morning, Your Honors, and may it please the court, counsel. This morning I'd like to focus my argument on the Fourth Amendment issue, though of course if this court has any questions about my second argument, I'd be more than happy to address them. Nervousness and furtive movements cannot be the bedrock of reasonable suspicion. And in this case, Officer Schaubing testified that at the time that he pulled over Samuel Beard, he did not believe that he had reasonable suspicion from what the state described as a headlong flight or from the anonymous tips that he had heard. Instead, he described that Beard and his passenger spoke too much for what he would expect and seemed too nervous, despite the fact that they were 18 and 17 respectively. Moreover, their furtive movements could have been innocently explained and also cannot form an independent grounds for reasonable suspicion. As this court wrote in People v. Thomas, although nervousness can contribute to reasonable suspicion, nervousness is not enough to arouse reasonable suspicion. Well, you stated, counsel, that it can't be the bedrock, but in this instance, it was added to what the officer already had perceived. It was added to two factors that themselves do not lead to reasonable suspicion. And I think it's important to go over the timeline a little bit. The two tips and the headlong flight were not all known to Officer Schaubing simultaneously. When he pulled into the church parking lot to assist with what he thought were some people locked out of the car, what he saw were the people from the truck standing on either side of the gold sedan, and he recognized one of the teenagers standing as somebody whose mother had made a statement that he had failed to come home one night, and she was generally concerned that he might be using drugs again, or marijuana specifically. At that time, he did not know that the gold sedan belonged to Mr. Beard, so he was not aware of two tips going together. He was only aware of one teenager, and if so, he should have followed the truck as it departed. Instead, he decided to follow the gold sedan, ran the license plate number, saw that it was registered to Dan Beard, and realized that who he saw had not been a middle-aged man and must have therefore been his son, Sam Beard. So these factors don't themselves create reasonable suspicion such that the nervousness and furtive movements were adding on. It's sort of like if the officer inverted the pyramid of reasonable suspicion. That is to say, nervousness and furtive movements can be the cherry on top. They can be the absolute pinnacle of the pyramid, but they can't be the foundation, and you can add other reasonable suspicion or things that do not independently create reasonable suspicion on top of nervousness. So in people vis-a-deck... I'm confused. What do you mean by that? You can't add on to nervousness? Going back to what I said, it can't be the bedrock. It can be, as in people vis-a-deck, you know, the car there stopped in the middle of the lane. This is already incredibly suspicious behavior. And then on top of that, the officer found that the defendant seemed nervous. But it's not just that he found nervousness and then other factors went on top of that. I apologize if I'm not being clear, Your Honor. But I also knew that Beard was suspected of selling drugs, right? Did he say that the kid came up to him at a ball game and said that Beard's been selling drugs to other kids? Some student said that at some ball game. Yeah, I mean, that's the type of information cops get. But he had that information, right? He had that information. He testified that he gets these sorts of tips all the time. However, an anonymous tip or even a semi-anonymous tip, since in this case, Officer Schaubing testified that he at one point knew who the student was, still needs to have some indicia of reliability. It needs to have some corroboration. Well, you keep compartmentalizing these things instead of combining them. Yes, anonymous tips in and of themselves. But what you're doing is you're parsing this thing out and saying, well, this issue, this by itself isn't enough. This by itself isn't enough. Is that really the way we look at these, that Fourth Amendment stops and searches? Or do we take into consideration the totality of the circumstances available to the officer at the time of the stop? Certainly, this court uses totality of the circumstances. I don't mean to parse, it's only that it's difficult to talk about everything at once. And I believe that this court's recent decision in People v. Thomas is very indicative of how this court can go through factors when there are factors that don't rise to reasonable suspicion. Certainly, this court examined all of the officer's testimony in People v. Thomas about the defendant driving straight through from Washington to Alabama, a 35-hour drive, not stopping, not having significant amounts of luggage, having a lot of road trash in his car, indicating that he wasn't stopping to eat at restaurants. But for its analysis, this court went through each individual factor and said, well, that's not enough. Some people don't like to fly. They prefer to drive. And some people don't stop at restaurants. And a lot of people who are on a 35-hour drive are chugging Red Bull and eating beef jerky. So going through and finding that each one didn't help the officer's reasonable suspicion, and then stepping back and looking, of course, at the totality of the circumstances, as one must in a Fourth Amendment review, it's equally here that each individual piece of the puzzle doesn't create reasonable suspicion. And thus, when they're put all together, and you look at the totality of the circumstances, you have a bunch of half-mismatched puzzle pieces that don't create a tableau of reasonable suspicion. So the flight here was simply Mr. Beard and the people in the truck exercising their right to not have contact with the police officer and could very well have believed that as a bunch of teenagers who were blocking an alleyway, they were about to get yelled at for being parked where they shouldn't have been parked. And so upon seeing Officer Chauvin drive through the church parking lot, decided that they'd better get into their cars and go, but didn't amount to the headlong flight that courts have confronted in cases like Illinois v. Wardlow, where the defendant, upon seeing an officer, started riding his bicycle as fast as he could down an alleyway, taking evasive maneuvers, and doing his level best to avoid the police. So not being a headlong flight, that does not add to the reasonable suspicion, and we have a mismatched puzzle piece. And then to the anonymous tips, without any indicia of corroboration, or if I may go through the four factors that this court uses for these tips, in people v. Rollins, the first is the quantity and the detail of the information. For the tip about Beard, the detail of the information was not on school property, and not during school hours. Usually after school, but not always, or it just said usually after school was Officer Chauvin's testimony. So this tip, such as it was, would cast a spurge over Samuel Beard any time that he existed anywhere that was outside of the school property, at any time that he wasn't in school. Counsel, if I can just interrupt for a second, and I apologize if maybe I'm just not understanding. I took your arguments in your brief to be focused primarily, excuse me, on the prolonging of the stop, not the initiation of the stop. I'm hearing your arguments today focusing on the initiation of the stop. Were you arguing that the initial stop itself was improper? Because I really read your arguments to be more that there wasn't that much of an issue on how they came together initially, it's the prolonging. Yes, your honor. This is above reproach. Samuel Beard was going to stop to conduct the mission of that stop, which would be to review his driver's license, his insurance information, the car's registration, or to attend to any matters pertaining to officer safety, as our US Supreme Court acknowledged it or decided in Rodriguez. The question here is whether there was reasonable suspicion to prolong that stop. Because in Rodriguez, the court decided that even a de minimis delay would require reasonable suspicion, otherwise it would be an undue delay for the Fourth Amendment. Here, even though this delay was only a 90-second phone call to Officer Hanley to come in from Toledo with the drug-sniffing dog, that delay was the de minimis delay that the court in Rodriguez said is unconstitutional. The real core question becomes, was there reasonable suspicion, which is why I focus so much of my oral argument on the factors that the state tried to present a trial to cause reasonable suspicion. The quantity and detail of the information contained in the tip was incredibly low. The second factor is the time interval between the tip and the stop. Officer Chauvin testified that it was probably around two months. At some point, he testified it could have been as recent as one month prior. But still, this is not a contemporaneous tip, such as a drunk driving tip or there's a drug deal about to happen tonight at this location. For a tip to cast a shadow on Samuel Beard, such as it impacted his Fourth Amendment claims, is simply too long and lacks the credibility that courts need in order for a tip to rise to reasonable suspicion. The third factor is whether the tip is based on contemporaneous eyewitness observations. Officer Chauvin, when he recounted this tip, at no point said that the student told him they had observed Samuel Beard selling drugs. The student really didn't say, or at least Officer Chauvin didn't testify that the student said how they had this information. For all we know, it could have been a rumor that was going around school. It could have been something that was heard from a person who told a person who told a person who saw Officer Chauvin in a baseball game or basketball game and said, this is what I heard. But certainly, there's no indication that it was an eyewitness account. Does it matter? It matters in that it's a factor and that none of these four factors exist here. Isn't it the information known to the officer at the time, not necessarily where it came from prior to him knowing? I believe that where the information prior to him knowing is actually an important factor. He would have to know that the tip was reliable and not just a rumor in order for him to act on it such that he can delay a stop under reason. Again, if that's the only thing. Again, you're compartmentalizing them to attack them. My problem with that is that it's not done that way. It's the totality of the information known to the officer at the time. Then allow me, if I may, Your Honor, to attach this tip to the headlong fight as it were, or the departure from the alley. At the time that Samuel Beard in his gold sedan departed from the alley, Officer Chauvin had no inkling that this attenuated tip that he had heard two months ago had any bearing on what he had seen in that alleyway because he didn't know that the man in the gold sedan was Samuel Beard. Here we have the merging of the field at the time that he pulled over the gold sedan. At that point, he did know it was Samuel Beard or he had figured it out that it wasn't Dan Beard who the car is registered to. But he still did not believe based on what he had seen in the alley, based on what he had heard either from the first teenager who was in the truck's mother or from this student at some ballgame, that he had reasonable suspicion. That leaves the next factors that he discussed, which is the nervousness and the furtive movements. That's how it all comes together in this totality of the circumstances review to never amount to the amount of reasonable suspicion required for this kind of delay. Didn't he testify that he believed based upon what he said were that the two individuals in the truck were startled when he pulled up or into the alley? Didn't he then testify that because of the departure and because they were startled that he suspected that a drug transaction may have occurred? He testified that he suspected that a drug transaction may have occurred. He did not see money change hands. He did not see any drugs change hands. Again, this wasn't a headlong plight. While he may have had a hunch that he saw a drug transaction take place, and certainly officers have good hunches all the time, the Fourth Amendment requires more than a mere hunch. It requires reasonable, articulable suspicion. A mere hunch that a drug deal had taken place in someone whose mother has asserted he's using drugs. Then he later determines that the driver of the vehicle is Samuel Beard, who is rumored to be a purveyor of drugs. He says they appeared far more nervous than any people of their age ordinarily would. In addition, the passenger attempted to answer questions on behalf of the driver as if he were trying to explain something. It seems like a lot of antennas go up. Antennas maybe. Up and they're starting to vibrate. Yes, Your Honor. Certainly, Officer Chauvin could have had a hunch. Could have had, you know, some police officers, you know, antenna and spidey sense that something here wasn't right. If so, he simply had to follow, excuse me, Your Honor, he simply had to follow this court's suggestion in People v. Sedek, where he could have called for the drug-sniffing dog to come in from Toledo before he began the stop. If this court watches the video, the camera begins filming when he's following the gold sedan at a reasonable distance. They're both going a reasonable speed. This is in a high-speed pursuit where he couldn't take his eyes off the road to make a call to dispatch. And there's some time that elapses between the beginning of the recording, which doesn't begin in the church alleyway, it begins on the road moving away, and the time that he pulls Samuel Beard's car over. If he had not reasonable suspicion, as he testified that he did not have at this point, but if he had his hunch, his antenna were vibrating, he certainly could have called for a drug-sniffing dog then. And then there would have been no delay, and then I would not be able to argue in front of this court that there was, that there was no reasonable suspicion. Again, I kind of go to this imagery of each puzzle piece just isn't enough. And so when they come together, even though I acknowledge the totality of the circumstances review, if this court upholds this kind of stuff, it seriously widens what courts can call a headlong flight. Very briefly, if I made to that point, the third district in People v. Smith said that to hold that the right to depart creates reasonable suspicion would create a heads-I-win, tails-you-lose situation for the state, but the Fourth Amendment is the loser. And if I may do the fourth factor briefly of an anonymous tip, the tip, or a tip is reliable if the tip has sufficient detail to permit the reasonable inference that the tipster actually witnessed what she described. Neither the mother's tip nor the anonymous tip from a student had any sort of verifiable information or corroboration that Officer Chauvin could have used to verify, to ensure that this was the kind of tip that he could use, which leaves him only with nervousness, which again, this court said it can contribute, but it cannot arouse reasonable suspicion. In People v. Thomas, this court held that nervousness combined with a history of drug trafficking was not enough for reasonable suspicion, and I urge this court to find similarly here, that nervousness and furtive movements are not enough to find reasonable suspicion. I see that my time is drawing to a close, so with that, I will save the rest for my rebuttal. Thank you. This is the first time at oral argument that anyone has used the phrase spidey sense, but it seemed appropriate. Thank you, counsel. You'll have time on rebuttal. Ms. McClain? May it please the court, counsel, the state disagrees, and we maintain that even if reasonable suspicion. Reasonable suspicion is based on the totality of the circumstances and not a parsing out of each factor. In this case, Chauvin's observation of nervousness and furtive movements contributed to reasonable suspicion. In this case, we had, upon seeing Chauvin, the subjects appeared pretty startled, and both vehicles took off in a hurry in opposite directions. The court below found that the individuals quickly departed, and the officer testified that usually individuals do not scatter and go opposite directions when they see a police officer, so this was part of his reasonable suspicion. In addition, the car doors stood open on the second vehicle as the individual spoke, adding to the short duration of their encounter in the anticipated getaway. Third, as Chauvin was stopping defendant's vehicle, the driver and the passenger were bending over and messing with something, quote, messing with something. I think the officer said that their heads went below the headrest, which would not have been accounted for if they were just looking through the glove compartment. Fourth, when Chauvin got to the driver's side door, both the driver and the passenger appeared overly nervous. The passenger was very interested in what Chauvin had to say and helped answer some of Chauvin's questions. The officer testified they were more nervous than young people their age during a traffic stop. Fifth, in addition, during the whole duration of the stop, they looked in the mirror and kept turning completely around to see what Chauvin was doing. The court found that they watched Chauvin much more closely than would the average citizen during a traffic stop. In this case, there was not only the nervousness and furtive movements of the driver and passenger, as the court found below in ruling on the motion to suppress, in his training and experience, Chauvin thought this situation that he approached looked like a drug transaction. One car parked in front of the second car with the second car's doors open, a male subject on each side of the first car leaning in the windows. And finally, there was also the two tips, there were two tips in this case regarding the driver and one of the juveniles at the other car. A known student had told Chauvin personally a month or two earlier that defendant was selling marijuana to high school students right after school and not on school property. The tip was, I would maintain that this tip was reliable where it was corroborated by the fact that it was defendant's It was right when school let out. There were two cars involved. It was a secluded area, an alley behind a church, not on school property. One of the other individuals at the scene was a high school student. And I think importantly, this specific individual, Chauvin had received information from his mother that she thought the student had begun using marijuana again. So we have the subject of one tip meeting the subject of a second tip, a seller and a buyer of marijuana according to both tips. And finally, again, I think this corroborates the tip in Chauvin's training and experience, it looked like a drug deal. I think that if you look at the totality of the circumstances in this case, it led Chauvin to believe that he had reasonable suspicion to prolong the stop. He needed reasonable suspicion at the time he made the phone call, not at the time he approached the car. And all these factors were present at the time he made that phone call. I think it's a fair inference from Chauvin's testimony that the informant was an eyewitness. The informant was a high school student who was just, pardon? Dismissed from school when everyone else was dismissed. So he would have had the opportunity to see what was going on after school, much like the Wendy's employee and Schaefer, a fourth district case from 2007. The state would ask this court to affirm the trial court's finding that there was enough reasonable suspicion to call the canine unit and prolong the stop for that reason. Are there any questions? I have a question. Counsel, if the officer believed a drug transaction had already occurred, why would the officer reasonably believe that there was any contraband still in the vehicle? I believe Officer Chauvin testified that in his experience, usually when there's a drug deal going down, there's drugs still left in the car, drugs still remaining that might be sold later or something. Well, that sounds more like a hunch than a reasonable suspicion to me. Well, I think with the totality of his circumstances, he still had enough to call for the canine unit. If you're referring to the stop, the stop was justified on the basis of speeding and crossing the center line. No, I'm not referring to the stop. I have no problem with that. If he believed the transaction had occurred when the cars were parked, I'm just curious why he would then still believe there was contraband in the vehicle. That particular vehicle as opposed to the other vehicle. That's my question. I believe he testified that in his experience and training, it's common to have more drugs in the car after a drug transaction. Well, that may be, but maybe the furtive movement would suggest that they're hiding something perhaps. Would that be a possibility? Definitely. I think their heads were going down below the headrest. It appeared it's possible they were hiding things underneath the seats of the car. I just have one other question generally. If there is a reasonable suspicion to prolong the stop, how long can the stop be prolonged? Is it 90 seconds? Is it five minutes? 15 minutes? Is there a case along that or is that just the standard what's a reasonable amount of time? I think a reasonable suspicion to prolong the stop in order for a canine unit to arrive. How long? That's what I'm asking. How long can you prolong it? I think you can prolong it until the canine unit arrives and does a free air sniff. Two hours? I have not seen any cases on that. I'm not exactly sure. There could be a point where there's a problem. Okay. Well, as to this case then, was the stop prolonged for 90 seconds? Is that what the facts show or was it less than that or more than that and does it even matter? I think in this case, the trial court found that the stop was prolonged for longer than necessary to complete the written warnings. However, I made an argument in my brief that it was not unreasonably prolonged, that if we're going to prolong a stop by, I think I saw a case where an officer takes a lozenge, does that prolong the stop? If the officer is making idle conversation, is that prolonging the stop? I mean, I think that the standard is unreasonably extended and not just prolonged. Okay. But under the facts of the case before us, how long was the stop prolonged? And I realize part of your argument is it wasn't, but hypothetically, if it was, what was the length of time that it was prolonged? That's what I would like to know. I think that the call was only 90 seconds. So 90 seconds is your answer? Yes. But then it takes 20 minutes for the dog to get there. The conversation between the two chiefs is 90 seconds and then it takes a period of time for the dog to arrive. In my case, during that time, he was still writing the citations. I'm just talking about the passage of time. Because when you say 90 seconds, it means like it took a minute and a half to get everything done. And that's not the case. Any other questions? Okay. We'll hear from Ms. Lucie on rebuttal. Thank you, Your Honor. To Justice Turner's point, the Rodriguez court was quite clear that any extension of a stop outside of the mission of the traffic stop, barring reasonable suspicion, is no longer permitted. The court did indeed on page 25 of this brief say that the stop was momentarily delayed, which pre-Rodriguez might have been what courts would have considered a Fourth Amendment. Post-Rodriguez, even the 90 second call in this case was a prolonged stop that implicates the Fourth Amendment. And to Justice Connick's point, while the call itself was 90 seconds, Officer Schaubing did testify that he could have given Beard the second citation before Officer Harding came in from Toledo with the drug sniffing dog. So the stop was delayed. Which means that reasonable suspicion had to exist. The movements that Officer Schaubing saw in the car, and I agree with the state that the suspicion had to exist before he made this phone call. So while he continued to see movements after he delayed the stop, I believe that this court's consideration should stop at the moment that he begins his phone call to Officer Hanley. At that time, these movements can be very innocently explained as two people desperately trying to locate the driver's license, the insurance information, and the registration. Officer Schaubing testified he saw the passenger reaching down. If they didn't find the valid insurance card in the glove compartment box, a reasonable place for an insurance card to have reached under the seat, reaching into the side compartments, maybe trying the driver's side compartment. It was his father's car. Who knows where this errant insurance card was. And as the Second District tells people to be petty, when a movement may be consistent with a number of innocent scenarios, then the officer's observation is a mere hunch. I would say that furtive movements would arise from a situation like the one that this court encountered in People v. Holdridge, where there was a smell of marijuana coming from the car, the officer saw a marijuana cigarette, and on top of these, there was furtive movements. I also have one question before we run out of time. You made an interesting argument in your opening that the officer should have called the K-9 unit before the officer even had reasonable suspicion to stop the vehicle. Now, I suspect if the officer had done that, then you would say that the officer was going to stop the vehicle no matter what. Otherwise, why would you have called the K-9 unit? What's your response to that? My response would be that the officer would not then have been able to stop the car unless he saw traffic violations like he did in that case. I can foresee a case where that would be an issue. The officer could have called the K-9 unit for a stop that hasn't been made and may not be made, and you don't even know where it would have been made. That seems to be probably not good police practice. At least, that's kind of my view. Absolutely, Your Honor. My comment was simply based off of this court's decision in People v. Sedek. If this court believes that that would not be a good law or a good practice, I will not spend my time advocating for that. I absolutely will defer to this court. Quickly to the corroboration of the tip, I will point out the tip didn't say anything about cars, about Sam being in his car, that cars were involved. Didn't say that he had eyewitnessed anything or she. We don't know the gender of the tipster. Again, to Justice Turner's point, because Officer Schaubing thought that there was a drug deal, at the time, he did not know that it was Samuel Beard in the car. He had the mother's tip about the other child, I believe Mr. McTeer, who got into the truck and drove away. Perhaps Officer Schaubing should have followed the truck. If he believed he saw a drug deal, that's where he might have thought the drugs were. Instead, he followed Samuel Beard before he even knew that it was Samuel Beard's car. Finally, to nervousness as a factor, I would only point to other cases where courts have found nervousness. They see visible cues such as shaking. In Sedeck, the officer testified he literally saw the defendant's heartbeat. I see my time has elapsed. With that, Your Honors, thank you very much. Thank you, counsel. We'll take this case under advisement. Stand in recess.